# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT NEBRASKA

| | |
|---|---|
| UNION PACIFIC RAILROAD COMPANY<br>1400 Douglas Street<br>Omaha, NE  68179<br><br>　　　　　　　　Plaintiff,<br><br>　v.<br><br>BROTHERHOOD OF RAILWAY CARMEN DIVISION TCU/IAM<br>3 Research Place<br>Rockville, MD 20850<br><br>　　　　　　　　Defendant. | :<br>:<br>:<br>:<br>:  CIVIL ACTION NO. _____<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, Union Pacific Railroad Company ("Union Pacific") brings this action to enforce the mandatory dispute resolution procedures of the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq*. seeking a declaratory judgment that an ongoing labor dispute between the parties is subject to mandatory and exclusive arbitration under the RLA.  In support of its Complaint, Union Pacific avers as follows:

## PARTIES

1. Union Pacific is a Class I railroad that provides freight transportation services in 23 States in the western half of the United States.  Union Pacific's headquarters building and principal place of business is 1400 Douglas Street, Omaha, Nebraska 68179.  Union Pacific is a "carrier" within the meaning of the RLA, 45 U.S.C. § 151, First.

2. Defendant Brotherhood Railway Carmen Division TCU/IAM ("BRC" or the "Organization") is an unincorporated labor organization in which employees participate and that exists for the purpose of, among other things, dealing with carriers pursuant to the RLA concerning rates of pay, rules and working conditions, including negotiation and administration

of collective bargaining agreements ("CBAs"). BRC is a "representative" within the meaning of Section 1, Sixth of the RLA, 45 U.S.C. § 151, Sixth. On Union Pacific, BLET represents employees in the craft or class of Railroad Carmen or "Carmen."

## JURISDICTION AND VENUE

3. Jurisdiction exists pursuant to the RLA, 45 U.S.C. §§ 151-188 and 28 U.S.C. §§ 1331, 1337.

4. Venue over this action properly lies in this Judicial District under 28 U.S.C. 1391(b)(1) and (2) because a substantial portion of the events giving rise to the claim took place in this Judicial District.

## THE RLA REQUIRES ARBITRATION OF MINOR DISPUTES

5. Under the RLA, disputes concerning the interpretation or application of CBAs are known as "minor disputes," and are subject to mandatory arbitration. The characterization of a dispute as a "minor dispute" does not reflect the importance or value of the dispute. Rather, the term "minor dispute" means that the dispute is one over the interpretation or application of an existing agreement, rather than a dispute over the formation of, or change to, the terms of an agreement. Section 3 of the RLA requires minor disputes to be resolved exclusively through arbitration before the National Railroad Adjustment Board ("NRAB"), or before an arbitration panel of coordinate jurisdiction established by the parties pursuant to the RLA (known as a Public Law Board or a Special Board of Adjustment). 45 U.S.C. § 153.

6. A minor dispute "relates either to the meaning or proper application of a particular provision [in a CBA] with reference to a specific situation or to an omitted case." *Consolidated Rail Corp. v. Ry. Labor Executives' Ass'n.,* 491 U.S. 299, 303-05 (1989) (*quoting Elgin, J. & E. Ry. Co. v. Burley*, 325 U.S. 711, 723 (1945)). "It is well established that collective bargaining agreements may include implied as well as express terms." *Brotherhood of Ry.*

*Carmen v. Missouri Pacific R.R. Co.*, 944 F.2d 1422, 1429 (8th Cir. 1991) ("*BRC v. MoPac*"); *Conrail*, 491 U.S. at 311.

7. Under the RLA, a dispute is a "minor dispute" subject to mandatory arbitration so long as the rail carrier's position with respect to the merits of the dispute is not "frivolous or obviously insubstantial." *Conrail,* 491 U.S. at 303-305; *BRC v. MoPac,* 944 F.2d at 1427. "Where an employer asserts a contractual right to take the contested action, the ensuing dispute is minor if the action is arguably justified by the terms of the parties' collective bargaining agreement." *Conrail*, 491 U.S. at 307. "[W]hen in doubt, the courts construe disputes as minor." *International Ass'n of Machinists & Aerospace Workers, District Lodge 19 v. Soo Line R.R. Co.*, 850 F.2d 368, 377 (8th Cir. 1988) ("*IAM v. Soo Line*") (*quoting Brotherhood of Loc. Eng'rs v. Atchison, Topeka & Santa Fe Ry Co.*, 768 F.2d 914, 920 (7th Cir. 1985)); *United Transp. Union v. Kansas City S. Ry. Co.*, 172 F.3d 582, 588 (8th Cir. 1999) ("*UTU v. KCS*").

8. While a minor dispute is being arbitrated, the "carrier may apply its reasonable interpretation of the disputed agreement." *BRC v. MoPac*, 944 F.2d at 1427 (*quoting IAM v. Soo Line*, 850 F.2d at 377). The Supreme Court has never recognized "a general statutory obligation on the part of an employer to maintain the status quo pending the [arbitrator's] decision." *Wheeling & Lake Erie Ry. v. Locomotive Engineers*, 789 F.3d 681, 691, 2015 BL 204654, 10 (6th Cir. 2015), citing *Conrail,* 491 U.S. at 304.

9. A union may not strike over a minor dispute; its sole recourse for an alleged contract violation is to pursue arbitration if the dispute is not resolved through the contractual grievance process. *Bhd. of R.R. Trainmen v. Chi. R. & I.R.R. Co.*, 353 U.S. 30, 39-42 (1957) ("*Chicago River*"); *BRC v. MoPac*, 944 F.d at 1427.

10. Section 2 First of the RLA also imposes an affirmative duty on the parties to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and

working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof. 45 U.S.C. § 152, First.

## THE PARTIES' COLLECTIVE BARGAINING AGREEMENTS

11. Union Pacific and BRC are parties to a collective bargaining agreement. This agreement, together with terms implied therein through past practice, course of dealing and management prerogative, establish the rates of pay, rules and working conditions of employees represented by BRC. This collective bargaining agreement applies to the Union Pacific system-wide in scope; it covers all of the employees represented by BRC who are employed by Union Pacific.

## DESCRIPTION OF THE MINOR DISPUTE

12. A dispute has arisen between Union Pacific and BRC concerning Union Pacific's right under its existing CBA in connection with the elimination of Carmen positions. The National Agreement between BRC and the Nation's major railroads, including Union Pacific, contains a provision granting the BRC the ability to request a joint check to verify the amount of scope covered work at a particular location where the carrier has abolished Carmen jobs. Union Pacific maintains that it is working to accommodate BRC's request for a joint check of the work remaining at the Kansas City location, but that the single day on which the parties met in Kansas City was not representative of the day-to-day work the truly remains at that facility. The relevant portions of this provision are recited below:

> If causes other than a transfer of work to another location precipitate the diminution of carmen's air brake inspection and testing work, at the locations identified above, nothing in this Article shall require the employment of a carmen if there is not sufficient work of the craft to justify employing a carmen. Any dispute as to whether or not there is sufficiency of work shall be determined according to the following procedures:

> Upon adequate advance request the General Chairman of Carmen shall be allowed access to the location in question to enable him to determine whether or not to request a joint check.
>
> When requested by the General Chairman the parties will undertake a joint check of the work done. During such check, there will be no change made in the scheduling of trains normally operated nor in the work normally assigned for the purpose of affecting the joint check.
>
> If the dispute is not resolved by agreement, it shall be handled under the provisions of Section 3, Second, of the Railway Labor Act, as amended, and pending disposition of the dispute, the railroad may proceed with or continue its determination. If the Board determines that the joint check has not been taken in accordance with the procedures described herein, the Board shall order another joint check and have the authority to 1) restore abolished positions, 2) award back pay; and 3) take other appropriate remedial action.
>
> The railroad shall have the burden of showing that the operations either were not changed or that any change that was made was for operational reasons and not to affect the joint check.

13. This provision does not define the parameters of a joint check, which are typically agreed upon by the parties. The parties identified a date on which to meet in Kansas City, but did not agree that the single date of observations would constitute the entirety of the "joint check." Such an agreement would not make sense given the variability of work that is performed day-to-day at any given facility. As such, this dispute constitutes a "minor dispute" as that term is used under the RLA because it arises out of the interpretation or application of an existing agreement concerning rates of pay, rules and working conditions. And, Union Pacific's position with respect to the merits of the dispute is not "frivolous or obviously insubstantial."

14. Additionally, this provision makes clear that "[i]f the dispute [regarding the "sufficiency of work"] is not resolved by agreement, it shall be handled under provisions of Section 3, Second, of the Railway Labor Act, as amended, and pending disposition of the dispute, the railroad may proceed with or continue its determination."

15. Because Union Pacific has a non-frivolous basis for its position that a joint check should be structured in such a way to allow the parties to determine jointly whether a sufficient amount of Carmen work remains at a facility, the single date of observations performed by the parties in Kansas City on [date] is insufficient to determine whether there is sufficient work remaining at Kansas City,, and because the National Agreement's procedures for resolving such disputes explicitly states that they shall be handled under Section 3, Second of the RLA, BRC's claim that Union Pacific is in violation of the parties' CBAs is a minor dispute subject to the exclusive jurisdiction of the NRAB.

## IMMEDIATE AND IRREPARABLE HARM

16. A work stoppage by BRC would cause a shutdown of Union Pacific's rail system and would cause immediate and irreparable harm to Union Pacific, its customers and the public.

17. Union Pacific is the largest carrier of finished automobiles west of the Mississippi River and operates or has access to 38 distribution centers. Union Pacific's extensive franchise directly serves five vehicle assembly plants and connects to West Coast ports, Mexico gateways, and the Gulf of Mexico to accommodate both import and export shipments. Approximately 70 percent of all new vehicles use rail for delivery, with Union Pacific handling more than 60 percent of the western U.S. rail automotive market share. Because U.S. automobile manufacturing facilities operate on a "just-in-time" basis, and have little room for storage of finished vehicles, a disruption of Union Pacific's inbound or outbound rail transportation would cause immediate disruption to U.S. automobile manufacturing plants.

18. The same is true for other manufacturers. Union Pacific serves many manufacturers that rely on the timely deliveries of parts or supplies, and for outbound transportation of finished goods. These facilities largely operate on a just-in-time inventory basis and have limited capacity to store finished goods. Accordingly, any disruption to Union Pacific's operations would cause immediate disruption to the many manufacturers that rely on Union Pacific. Union Pacific is also a major shipper of grain, transporting grain and grain

products from the Midwest to domestic markets and for export to Mexico through ports in the Gulf Coast and Pacific Northwest. Union Pacific currently is in the middle of its peak grain shipment season and a disruption to Union Pacific's operations would impact the availability of grain and grain products.

19. Another key industry served by Union Pacific is coal. Union Pacific handles hundreds of daily shipments of coal from the Powder River Basin to utility companies such as Ameren, American Electric Power and Wisconsin Electric that are responsible for providing electricity, including heating and air conditioning, for millions of homes and businesses. Coal is not shipped by truck in sufficient quantity to keep coal-fired utility plants in operation, and many such plants maintain only a few days of coal supply. Union Pacific is directly responsible for servicing mines in the following major U.S. coal basins: the Southern Powder River basin, the Uinta basin in Colorado and Utah, the Illinois basin, and the Hanna basin in Southern Wyoming. This year, Union Pacific will ship approximately 85 million tons of coal. Any disruption of the "coal pipeline" would cause immediate and irreparable harm to Union Pacific, to the customers who rely on Union Pacific, and to the public, which would result in additional ill-effects long after the service disruption ended. A prolonged work stoppage would affect the ability of the utilities served by Union Pacific to generate sufficient electricity to serve millions of their customers.

20. Union Pacific also transports commodities that are essential to the U.S. economy and for public health and safety. These commodities include: medical grade plastic, water purification chemicals, chlorine, steel and other metals, ethanol, perishable and refrigerated food, gas and oil. Many of these commodities cannot be shipped by truck because of safety concerns or because the volume of the commodities are too great for truck transportation. A work stoppage that disrupts Union Pacific's rail operations would have an immediate impact on the many industries that rely on Union Pacific to deliver these essential commodities and on the public that these industries serve.

21. Union Pacific's rail network connects 23 states in the western two-thirds of the country. Union Pacific serves many of the largest and fastest-growing U.S. population centers, operates from all major West Coast and Gulf Coast ports to eastern gateways, connects with Canada's rail systems, and is the only railroad serving all six major Mexico gateways. Union Pacific connects with other major U.S. freight railroads in Chicago, Kansas City, St. Louis and many other U.S. gateways. Any service problem at any one of these interchange points will immediately affect traffic not only across Union Pacific's 23-state system, but also across the country. A job action on the Union Pacific will necessarily adversely affect the nation's other major railroad. The effects of a job action against Union Pacific also would extend internationally. In 2019, approximately 40% of Union Pacific freight originated or terminated outside of the U.S., and a disruption to operations would impact the global supply chain, of which Union Pacific is a critical link

22. A work stoppage would also cause severe financial harm to Union Pacific. For the twelve-month period ending September 30, 2020, Union Pacific generated approximately $54 million per day of operating revenue from more than 21,000 freight shipments per day. Transportation services cannot be stockpiled. Any disruption to Union Pacific's daily shipment of freight would cost Union Pacific tens of millions of dollars per day in lost revenue. Customers who are able to find alternative means of shipment may never return.

## COUNT I – DECLARATORY JUDGMENT (MINOR DISPUTE)

23. Union Pacific incorporates by reference as if fully set forth herein each and every allegation of the preceding Paragraphs.

24. This Cause of Action arises under Sections 2 First and 3 of the RLA, 45 U.S.C. §§152 First, 153.

25. There exists a current, live and ripe controversy that warrants declaratory and injunctive relief from this Court.

26. Union Pacific has existing CBAs with BRC, which remain in full force and effect. These agreements, together with implied terms, past practice and other established working conditions, set forth the terms and conditions of employment of Union Pacific's BRC-represented employees.

27. Union Pacific contends that its CBAs, as properly interpreted, do not prohibit Union Pacific from conducting a second time study in connection with the elimination of Carmen positions at any location. BRC disputes Union Pacific's interpretation of the applicable CBAs, and maintains that Union Pacific is in violation of the RLA as well as the parties' CBAs.

28. The dispute between BRC and Union Pacific is a minor dispute under the RLA, and thus subject to mandatory arbitration. The nature of the dispute is one that arises out of the interpretation or application of the parties' CBAs, and Union Pacific's position with respect to the merits of the dispute is not frivolous or obviously insubstantial.

29. BRC's threat to strike over the instant dispute violates BRC's duties under the RLA to pursue and exhaust the exclusive, administrative remedies for minor disputes which are set forth in Section 3 of that Act, including final and binding arbitration. The RLA precludes strikes, work stoppages, or other forms of self-help over minor disputes.

30. Union Pacific has at all times been willing to comply with the procedures of the RLA and has exercised and is continuing to exercise reasonable efforts to resolve this dispute with BRC.

31. Union Pacific has exhausted all available remedies under the RLA to prevent Defendant's unlawful activity and has no adequate remedy at law.

32. As to each item of relief sought herein, greater injury will be inflicted on the public and Union Pacific if such relief is denied than will be inflicted upon Defendant by the granting thereof.

## COUNT II – BREACH OF SECTION 2 FIRST

33. Union Pacific incorporates by reference as if fully set forth herein each and every allegation of Paragraphs 1 through 35 above.

34. This Cause of Action arises under Section 2 First of the RLA, 45 U.S.C. §152 First.

35. Section 2 First imposes an affirmative duty on the parties:

> to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof.

45 U.S.C. §152 First.

36. Defendant has breached its obligation under Section 2 First to settle the dispute with Union Pacific concerning Union Pacific's right to conduct a second time study through the dispute resolution/arbitration procedures mandated by the RLA by threatening to strike Union Pacific over the dispute.

37. Defendant's threatened strike against Union Pacific threatens to cause substantial disruption to Union Pacific and to the national freight transportation system.

38. Union Pacific has been willing at all times to comply with its duties under Section 2 First and has exercised and is continuing to exercise reasonable efforts to resolve this dispute with Defendant.

39. Union Pacific has exhausted all available remedies under the RLA to prevent Defendant's unlawful activity and has no adequate remedy at law.

40.     As to each item of relief sought herein, greater injury will be inflicted on the public and on Union Pacific if such relief is denied than will be inflicted upon Defendant by the granting thereof.

## PRAYER FOR RELIEF

WHEREFORE, Union Pacific respectfully requests that the Court grant the following relief:

(1)     Issue a Judgment declaring that the present dispute concerning Union Pacific's right to conduct a second time study in connection with the elimination of Carmen positions is a "minor dispute" under the RLA, and is subject to the compulsory and exclusive arbitration mechanisms set forth in section 3 of the RLA, 45 U.S.C. § 153;

(2)     Issue a Judgment declaring that Defendant's threat to cause a work stoppage or strike against Union Pacific over the aforesaid minor dispute violates the RLA by seeking to circumvent the mandatory and exclusive authority of the National Railroad Adjustment Board;

(3)     Issue a Judgment declaring that, by threatening to engage in a work stoppage or strike, Defendant has breached its duty under Section 2 First of the RLA to settle all disputes through the RLA's mandatory dispute resolution/arbitration procedures;

(4)     Order Defendants to pay the costs of these proceedings, including reasonable attorneys' fees; and

(5)     Grant Union Pacific such other and further relief as the Court may deem proper and just in the circumstances.

Respectfully submitted,

/s/*Robert S. Hawkins*
ROBERT S. HAWKINS
(*a member of the bar of this Court*)
ANDREW J. ROLFES (*pro hac vice pending*)
COZEN O'CONNOR
1650 Market Street, Suite 2800
Philadelphia, PA 19103
(215) 665-2015 (phone)
(215) 717-9535 (fax)
rhawkins@cozen.com
arolfes@cozen.com

And

JACQUELYN V. CLARK
Union Pacific Railroad
1400 Douglas Street STOP 1580
Omaha, NE 68179
(402) 544-3078 (phone)
jvclark@up.com


Counsel for Plaintiff
Union Pacific Railroad Company

Date: May 4, 2021